DOMENGEAUX, Judge.
Defendants, Eddie Malone and his insu-ror, Fireman’s Insurance Company of Newark, New Jersey, appeal an adverse district court judgment whereby they were cast for damages as the result of an alleged livestock poisoning incident.
The facts show that in the middle part of January, 1971, Malone took three large containers of sweepings from the floor of the Alexandria Feed and Seed Company, aggregating some 450 lbs. of trash. A large portion of this was seed rice which had been treated with a mercury containing substance known as Panogen and also with an insecticide called Aldrin. He took the three barrels to the home of his father-in-law, W. P. Adams, and transferred them to the latter’s pickup truck, as it was equipped with mud-grip tires and the weather was wet and icy. The two of them then drove to Camp Livingston, near Alexandria, Louisiana, where Malone dumped the contents of the three barrels.
The area of Camp Livingston wherein Malone dumped the rice was leased to plaintiff, Herman Lee McVay, by the United States Government as a grazing area. By the terms of his permit plaintiff was allowed to maintain forty head of cattle and two horses on the 2,500 acre pasture but in fact he had substantially more livestock in the pasture, which was completely fenced in.
On July 2, 1971, plaintiff filed suit against Malone and his insuror, alleging that as a result of eating the rice seed two horses and eighteen cows had died and *742 eight more had diminished in value. He sought damages for the loss of his livestock, his veterinary bills, and extra feed which he alleged was necessary to the recuperation of the sick cattle. Defendants answered denying plaintiff’s allegations and naming W. P. Adams and his insuror, Employer’s Commercial Union, as third party defendants.
Following a trial on the merits, the district judge rendered judgment dismissing the third party defendants and in favor of plaintiff and against defendants for the sum of $5,062.50, representing $5,000.00 for the loss of eighteen cows and two horses, and $62.50 for veterinary bills. Before us now is defendant’s appeal of that judgment.
Defendant Malone admitted dumping the poisonous rice in the area used by plaintiff as a pasture and admitted that he knew the rice to be poisonous at the time that he did so. Two veterinarians established that two of plaintiff’s cows and one of his horses had eaten large amounts of the rice by their testimony regarding their examination of the stomachs of those animals. Additionally, one of those veterinarians testified that he saw from eight to fifteen cows, other than the aforementioned two, exhibiting symptoms of mercury poisoning. A third veterinarian, the District Veterinarian with the Livestock Sanitary Board, testified that he had tagged eight of plaintiff’s cows. The tags indicated that the cows had consumed mercury and could not be sold for slaughter without the permission of the Sanitary Board.
Plaintiff testified that he saw eight dead cows and two dead horses. He never saw the remaining ten cows for which he was awarded damages and admits that he made little, if any, effort to find them. He merely presumed they were dead because they never returned to the feeding area. He stated, however, that he had lost several cows to hunters and that in one year alone he lost four cows to cattle rustlers.
We are not inclined to reverse the trial judge on his findings of fact based on his evaluation of the credibility of the witnesses. We therefore concur in his determination that plaintiff lost the eight cows and two horses that he found dead. Because there is ample evidence in the record to support it, we further concur in his finding that those animals died as a result of eating the poisonous rice discarded by defendant.
We are unable, however, to agree with our learned brother of the district court insofar as he awarded the plaintiff damages for the deaths of an additional ten cows. The evidence that their loss, if such occurred at all, was due to their being poisoned by the defendant’s rice, is so inadequate as to fail to carry the plaintiff’s burden of proof. As we said in Hargis v. Travelers Indemnity Company, 248 So.2d 613:
The law of this state requires that a plaintiff make out his case by a fair preponderance of the evidence. Johnson v. Kennedy, 235 La. 212, 103 So.2d 93. Mere speculation, suspicion or probability cannot form a proper basis to sustain a judgment. White v. Johness, 237 La. 1074, 112 So.2d 717; Guillory v. New Amsterdam Cas. Co., 244 La. 225, 152 So.2d 1. Further, while it is true that the burden of proof may be met through the use of circumstantial evidence, such evidence must be of a nature to exclude with a fair amount of certainty all other reasonable hypotheses. American Employers Insurance Co. v. Schoenfield, La.App., 144 So.2d 595; and cases cited therein.
Accordingly, we think the trial judge erred in awarding damages for the ten cows that were unaccounted for.
The trial judge was, however, eminently correct in holding the third party defendant, W. P. Adams, free from negligence. It is clear from both his testimony *743 and that of defendant Malone that Adams had no knowledge of the dangerous nature of the seed rice, and that he did not partake in the dumping of the rice, other than to drive his truck to the site. Not having either actual or constructive knowledge that the dumping of the seed rice involved danger to cattle, Adams could not be found guilty of negligence. Spiers v. Consolidated Companies, 241 La. 1012, 132 So.2d 879.
The trial judge placed values of $350.00 on the stallion, and $150.00 on the mare, both of which were Tennessee walking horses. Their values were based principally on the testimony of plaintiff himself, as he appeared to be knowledgeable in such matters. This was a determination of credibility on the part of the trial judge which, not being manifestly erroneous, will not be disturbed by this court.
Likewise, the value placed on the cows of $250.00 each seems reasonable in view of the evidence. Particularly convincing is the testimony of one Mr. Dayton, an employee of a livestock auction company since 1946. He inspected the herd from which the dead cattle had come and estimated their value to be $250.00 a head. The evidence is clear that the dead cows were similar to those remaining in the herd. The trial judge did not err, therefore, in accepting that valuation.
Plaintiff neither appealed nor answered the appeal of defendants. We therefore do not consider the trial court’s rejection of his demands for damages representing the alleged extra expenditures on feed, and those representing the allegedly diminished value of the eight cows tagged by the Sanitary Board. The amount of the veterinary bill, $62.50 is not in dispute.
For the above and foregoing reasons the judgment of the district court is amended so as to decrease the amount awarded to plaintiff from $5,062.50 to the sum of $2,562.50, with legal interest from date of judicial demand, and as thus amended it is affirmed. Costs of this appeal are to be borne by plaintiff-appellee. All other costs are to be borne by defendants-appellants.
Amended and affirmed.